UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAI SUNDEEP REDDY GALI,<br><br>　　　Petitioner,<br><br>v.<br><br>MARK BOWEN, et al.,<br><br>　　　Respondents. | Case No. 5:26-cv-04139-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I.    INTRODUCTION

Sai Sundeep Reddy Gali ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  The parties have consented to the jurisdiction of the Magistrate Judge.  (Dkt. 6.)  The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

//

//

//

1

## II.    PROCEDURAL HISTORY

Petitioner filed the present Petition on July 23, 2026.  (Dkt. 1.)  The Petition raises the following claims:

Ground 1: Respondents violated Petitioner's Fifth Amendment right to procedural due process by failing to provide him with the following prior to his arrest: (a) advance notice that detention was being contemplated; (b) written notice identifying the factual basis for detention; (c) notice of any evidence supporting detention; (d) an individualized determination that detention was necessary; (e) an opportunity to present evidence; (f) an opportunity to contest the proposed detention; or (g) a hearing before a neutral decisionmaker.  (Pet. at 11-14, ¶¶ 73-89.)

Ground 2: Respondents violated Petitioner's Fourth Amendment right against unreasonable seizure and detention by arresting him "without presenting a warrant, without demonstrating circumstances authorizing a warrantless immigration arrest, and without any individualized justification for the seizure."  (Pet. at 14-16 ¶¶ 90-99.)

Ground 3: "Because the Government obtained and continues to exercise physical custody over Petitioner through unconstitutional means, his continued detention is unlawful."  (Pet. at 16-17, ¶¶ 100-08.)

The Petition seeks (a) immediate release from custody, and (b) an order "enjoin[ing] Respondents from re-detaining Petitioner based upon the July 22, 2026 arrest absent compliance with the requirements of the Fourth and Fifth Amendments and any further lawful process required by the Constitution."  (Pet. at 17.)

Respondents answered the Petition on July 30, 2026.  ("Answer" at Dkt. 8.)  First, they state, "Petitioner does not appear to have asked for a bond hearing. … Respondents are not presenting an opposition argument with respect to providing Petitioner a bond hearing."  (Id. at 2.)  Second, they argue, "Petitioner has failed to

plead unlawful detention" because DHS has broad authority to detain Petitioner while his removal proceedings are pending.  (Id. at 2.)  Third, they argue that Zadvydas v. Davis, 533 U.S. 678 (2001) is inapplicable because Petitioner does not have a final order of removal.  (Id. at 2-3.)  Finally, they argue, "Petitioner has not pled any violations of due process … that compel[] his release from detention.  Petitioner is being afforded due process under the law in his ongoing immigration proceedings."  (Id. at 3.)

Petitioner replied on July 31, 2026.  ("Reply" at Dkt. 9.)  He argues, "Respondents' Answer fails to address the constitutional claim actually presented in the Petition."  (Id. at 2.)

**III.   FACTUAL RECORD**

Petitioner is a native and citizen of India.  (Pet. at 5, ¶ 22.)  On or about July 18, 2022, he lawfully entered the United States through the Port of Entry at Los Angeles International Airport pursuant to a valid F-1 nonimmigrant student visa.  (Pet. at 5, ¶ 23.)

Petitioner successfully completed his course of study in the United States and thereafter remained in this country while pursuing protection under the immigration laws by filing an application for asylum, which remains pending.  (Pet. at 5, ¶ 24; see also Pet. Ex. A / Dkt. 1-2 (appointment notice for asylum application).)  Based upon his pending asylum application, Petitioner obtained valid employment authorization issued by DHS, which authorized him to lawfully work in the United States.  (Pet. at 5, ¶ 25.)

Petitioner is married to a United States citizen, maintains stable employment and owns residential property.  (Pet. at 5-6, ¶ 26.)  Petitioner has never been convicted of, arrested for, or charged with any criminal offense in the United States or elsewhere.  (Pet. at 6, ¶ 29.)

On the morning of July 22, 2026, Petitioner prepared to leave his residence to obtain coffee before reporting to work.  (Pet. at 6, ¶ 32.)  Petitioner's father

accompanied him and was seated in the passenger seat of his vehicle.  (Pet. at 6, ¶ 33.)  As Petitioner exited his driveway, ICE officers stopped his vehicle and demanded that he produce identification documents.  (Pet. at 6, ¶¶ 34-35.) Petitioner produced his California driver's license and his Employment Authorization Document.  (Pet. at 6-7, ¶ 37.)  "Petitioner remained cooperative throughout the encounter and made no attempt to flee, evade questioning, or interfere with the officers."  (Pet. at 7, ¶ 38.)

ICE officers removed him from his vehicle and placed him under arrest. (Pet. at 7, ¶ 39.)  They "did not present Petitioner with a judicial warrant, an administrative warrant, or any other legal process authorizing his arrest."  (Pet. at 7, ¶ 40.)  Petitioner "repeatedly asked why he was being detained," and the ICE Officers "failed to provide any meaningful explanation for the seizure or continued detention."  (Pet. at 7, ¶¶ 44-45.)

"Following Petitioner's arrest," DHS served him with a Notice to Appear ("NTA") dated July 22, 2026, charging him under Immigration and Nationality Act ("INA") § 237(a)(1)(B) as a nonimmigrant who remained in the United States for a time longer than permitted.  (Pet. at 8, ¶ 55; Answer Ex. A / Dkt. 8-1 (the NTA).) The NTA's certificate of service states Petitioner refused to sign.  (Id.)

His removal case remains pending, with a master hearing set for August 7, 2026.  See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 234-625-736 (India), last accessed August 3, 2026).  He remains in ICE custody in Adelanto, California.  See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 234-625-736 (India), last accessed August 3, 2026).

## IV.   DISCUSSION

### A.   **Petitioner is Entitled to Relief on Ground 1, His Claim That Due Process Required a Pre-Deprivation Hearing.**

#### 1.   Parties' Arguments.

Petitioner argues that Respondents violated his Fifth Amendment right to procedural due process by failing to provide him with the following prior to his arrest: (a) advance notice that detention was being contemplated; (b) written notice identifying the factual basis for detention; (c) notice of any evidence supporting detention; (d) an individualized determination that detention was necessary; (e) an opportunity to present evidence; (f) an opportunity to contest the proposed detention; or (g) a hearing before a neutral decisionmaker.  (Pet. at 11-14, ¶¶ 73-89.)

Respondents' Answer fails to respond to this argument in any meaningful way.  They argue that (a) he could ask for a post-deprivation bond hearing, (b) the government has broad discretion to detain people like Petitioner during removal proceedings, and (c) <u>Zadvydas</u> does not apply because Petitioner does not have a final order of removal.  (Answer at 2-3.)  Petitioner has not raised a claim under <u>Zadvydas</u>.

Accordingly, Petitioner is entitled to relief on this claim based on a lack of response.  (<u>See</u> Dkt. 5 at 1-2 (Standing Order for 2241 Immigration Petitions, stating, "**Failing to file an answer by the due date−or filing an answer that fails to substantively respond to any claim in the petition−may result in the Court granting the petition or claim as unopposed.**") (emphasis in original).)  Petitioner is also entitled to relief on this claim for the reasons stated below.

#### 2.   Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. V.  The right to due process extends to "all

'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

### 3. Analysis.

#### a. Liberty interest and private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Petitioner has a reliance interest on the "implied promise" that immigration authorities would not revoke his liberty, and that reliance was justifiable given that he has remained in the country without incident for years while pursuing his asylum claim. See, e.g., Garcia v. Semaia, No. 26-cv-01525-MWC-RAO, 2026 WL 966575, at *3 (C.D. Cal. Apr. 7, 2026). Cf. Pinchi, 792 F. Supp. 3d at 1034. Moreover, his has separated him from his spouse and

prevented him from continuing the lawful immigration process he had been diligently pursuing. Accordingly, Petitioner's private interest in remaining free from detention is significant.

                b.      Risk of an erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Respondents have never explained—either to Petitioner at the time of his arrest or in the present proceedings—how Petitioner's detention serves either of these purposes. Respondents have not disputed Petitioner's allegations that he has no criminal record, maintains stable employment, and is pursuing an asylum claim. (Pet. at 5-6, ¶¶ 24-29.) A pre-deprivation hearing would require the government to produce its evidence of danger or flight risk and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

                c.      Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado v. Semaia, No. 26-cv-1202-SSS-AS, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's

experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days.  Respondents have presented no evidence to the contrary.  In fact, their Answer states, "To the extent a bond hearing is ordered here, it should be consistent with what Courts in this District have generally ordered in similar cases, which is to require an 8 U.S.C. § 1226(a) hearing to be provided within seven days."  (Answer at 3.)

d.    Appropriate remedy is release, not post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights.  Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context.  See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").[1]

---

[1] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights.  See, e.g., Medrano-Rocha, 2026 WL 411355, at *7 (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL 931143, at *4 (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention"); Fernandez, 2026 WL 136229, at *7 (ordering release and enjoining re-detention "unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner's re-detention").

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

**B.      Petitioner is Entitled to Relief on Ground 2, His Claim That His Warrantless Arrest Was Illegal.**

**1.      Parties' Arguments.**

Petitioner argues that Respondents violated his Fourth Amendment right against unreasonable seizure and detention by arresting him "without presenting a warrant, without demonstrating circumstances authorizing a warrantless immigration arrest, and without any individualized justification for the seizure." (Pet. at 14-16 ¶¶ 90-99.)  Respondents' Answer again fails to respond to this claim. To the extent Petitioner was arrested without a warrant, he is also entitled to relief on this claim for the reasons explained below.

---

IJ. Id. at *5.

9

**2.    Legal Standard.**

Because generally "it is not a crime for a removable alien to remain present in the United States," then "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." Arizona v. United States, 567 U.S. 387, 407 (2012). "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." Arizona, 567 U.S. at 407.

"When an alien is suspected of being removable, a federal official issues an administrative document called a 'Notice to Appear.'" Arizona, 567 U.S. at 407 (citing 8 U.S.C. § 1229(a) and 8 CFR § 239.1(a)). The NTA "gives the alien information about the proceedings, including the time and date of the removal hearing." Arizona, 567 U.S. at 407 (citing 8 U.S.C. § 1229(a)(1)). The NTA "does not authorize an arrest." Arizona, 567 U.S. at 407. The INA provides, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); see also 8 C.F.R. § 1236.1(b)(1) ("At the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, the [noncitizen] may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.")

"If no federal warrant has been issued, [federal immigration] officers have more limited authority" to arrest noncitizens under 8 U.S.C. § 1357(a). Arizona, 567 U.S. at 407. An immigration officer may arrest a noncitizen if the officer "has reason to believe that the alien … is in the United States in violation of … law or regulation and is likely to escape before warrant can be obtained for his arrest…." 8 U.S.C. § 1357(a)(2); see also 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). Thus, "a warrantless arrest requires an individualized assessment of the person's

10

flight risk." United Farm Workers v. Noem, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025).

> In making this determination, courts consider a number of factors that were known by ICE officers at the time of the arrest, including whether the foreign national: (1) was arrested near his home; (2) lacked a known criminal history at the time of his arrest; (3) answered questions posed to him by ICE without incident or evasion; (4) was working in the area; (5) had a stable residence with a spouse, fiancé, and children; (6) had children or other family with proper immigration status; (7) was linked to altered identity documents; (8) had past attempts to flee; and (9) lacked ties to the community, such as family, home, or a job.

Castanon Nava v. Dep't of Homeland Sec., 806 F. Supp. 3d 823, 854 (N.D. Ill. 2025) (collecting district court cases).

### 3. Analysis.

Here, Respondents have failed to dispute Petitioner's assertion that no arrest warrant was issued.  They have also failed to allege any facts that would justify a warrantless arrest.  Accordingly, Petitioner is also entitled to relief on this claim.

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. The Petition is granted.

2. Respondents shall **immediately release** Sai Sundeep Reddy Gali (A# 234-625-736) from custody.

3. If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker

11

where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[2]

DATED:  August 3, 2026          _____

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[2] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).